IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PHILIPS MEDICAL SYSTEMS PUERTO RICO, INC.,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>GIS PARTNERS CORP.; HERNAN TORO; DAVID SUMPTER and RADAMES BRACERO,<br><br>　　　　Defendants. | CIVIL No.<br><br>RE: PRELIMINARY AND PERMANENT INJUNTIVE RELIEF PURSUANT TO THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030, PUERTO RICO'S INDUSTRIAL AND TRADE SECRET PROTECTION ACT, 10 P.R. LAWS ANN. §§4131-4141; BREACH OF CONTRACT; UNFAIR COMPETITION; UNJUST ENRICHMENT AND DEMAND FOR JURY TRIAL |

## **VERIFIED COMPLAINT**

**TO THE HONORABLE COURT:**

COMES NOW plaintiff, Philips Medical Systems Puerto Rico, Inc. ("Philips PR" or "plaintiff"), through its undersigned attorneys and, in support of this Complaint for preliminary and permanent injunctive relief for the misappropriation of trade secrets and computer fraud, respectfully avers and prays as follows:

### **NATURE OF ACTION**

1.　This is an action for preliminary and permanent injunctive relief to prevent defendants from causing irreparable harm to plaintiff and for damages to redress injuries suffered by plaintiff, all as a result of wrongful conduct by defendants, individually and/or collectively, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030 ("CFAA") and Puerto Rico's Industrial and Trade Secret Protection Act, 10 P.R. Laws Ann. §§4131-4141 ("ITSPA").

### **VENUE AND JURISDICTION**

2.　This Court has original jurisdiction over the claim for relief under the CFAA.

3.  The Court as well has supplemental jurisdiction over the claims under Puerto Rico law pursuant to 28 U.S.C. §1367.

4.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) as all defendants reside in Puerto Rico. In addition, pursuant to 28 U.S.C §1391(b)(2), venue in this district is proper because a substantial part of the events or omissions giving rise to plaintiff's claim occurred in this judicial district and/or a substantial part of the property that is the subject of the action is situated.

## THE PARTIES

5.  Philips PR is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, engaged, among other things, in the sale and servicing of medical equipment and supplies, with its principal place of business located at Winston Churchill Ave., Suite 302, El Señorial, San Juan, Puerto Rico 00926. As part of its trade, Philips PR provides for the repair and maintenance of its products through authorized field service engineers ("Field Service Engineer(s)") and/or agents with accredited access to their internal computer systems protected by passwords and other security features, among other places, within the Commonwealth of Puerto Rico, as well as the greater Caribbean and elsewhere. Philips PR is a subsidiary of Royal Philips Electronics (hereinafter, collectively referred to as "Philips").

6.  GIS Partners Corp. ("GIS") is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business located at Valles de Altamira, Calle Rosa 315, Ponce, Puerto Rico. GIS transacts business in this judicial district and, upon information and belief, enters into contracts with hospitals and healthcare providers for the servicing, repair and maintenance of medical equipment as part of its trade, including "Philips" branded medical equipment. In performing the services at

2

issue in this action, GIS conducts tests and diagnostic analyses of Philips medical equipment by and through the unauthorized access of their internal computer systems.

7.  Defendant David Sumpter López ("Mr. Sumpter-López") is a resident of Cidra, Puerto Rico and GIS's former Chief Executive Officer for the period of February 11, 2010 and April 21, 2014. As further described below in this Complaint, at all relevant times Mr. Sumpter-López knew or had reason to know of GIS' unauthorized access of plaintiff's proprietary computer systems.

8.  Defendant Hernán Toro Aponte ("Mr. Toro-Aponte") is a resident of Cabo Rojo, Puerto Rico, GIS's former Treasurer and Chief Executive Officer as of April 22, 2014. As further described below in this Complaint, at all relevant times Mr. Toro-Aponte knew or had reason to know of GIS' unauthorized access of plaintiff's proprietary computer systems.

9.  Upon information and belief, defendant Radames Bracero ("Mr. Bracero") is a resident of Bayamón, Puerto Rico and a former Field Service Engineer of Philips PR. As further described below in this Complaint, at all relevant times following his termination of employment with Philips PR, Mr. Bracero facilitated GIS' unauthorized access of plaintiff's proprietary computer systems by clandestinely collecting and intentionally disclosing to GIS, Mr. Sumpter-López and/or Mr. Toro-Aponte its passwords, security features and other related confidential information.

## FACTUAL ALLEGATIONS

10. In connection with the installation, configuration, maintenance and repair of Philips medical equipments, plaintiff utilizes certain proprietary service applications (hereinafter, "Proprietary Service Applications") – including, but not limited to software, hardware and codes – not available for sale or licensing to customers or third parties.

3

11. These Proprietary Service Applications interconnect and communicate with Philips' CSIP Digital Rights Management Application embedded on each of the systems it manufactures.

12. Philips' CSIP Digital Rights Management Application, in turn, controls third party access and use of protected digital information, files and other restricted content within its medical equipments.[1]

13. Both "Smart Card Dongle" and "MR Response Generator Tool" are Proprietary Service Applications designed and developed by Philips for accessing its CSIP Digital Rights Management Application.

14. "Philips Medical Systems Security" or "PMSSec" is a proprietary legacy[2] platform[3]/solution for Philips' CSIP Digital Rights Management Application.

15. The "Integrated Security Tool" or "IST" is Philips' existing proprietary platform/solution for its CSIP Digital Rights Management Application. IST provides backward compatibility to support legacy PMSSec protected applications still in use today.

16. Strictly speaking, the "Smart Card Dongle" is a PMSSec authentication and service authorization device that unlocks CSIP Digital Rights Management Application's software functionality when attached to Philips' medical equipments.

17. Likewise, the "MR Response Generator Tool" is a PMSSec integrated application that runs on engineer laptops and facilitates access to Philips' CSIP Digital Rights Management Application through a non-cryptographic challenge–response. This

---

[1] For ease of reference, at times throughout the Complaint, plaintiff's Proprietary Service Applications and CSIP Digital Rights Management Application are jointly referred to as "proprietary computer systems".

[2] "Legacy. Anything left over from a previous version of the hardware or software. For example, *legacy applications* are applications from earlier versions of DOS or Windows". Barron's Dictionary of Computer and Internet Terms (Barron's Educational Series, Inc. 11th ed. 2013).

[3] "Platform. A piece of equipment or software used as a base on which to build something else. For example, a mainframe computer can serve as a platform for a large accounting system. Microsoft Windows serves as a platform for application software." Barron's Dictionary of Computer and Internet Terms (Barron's Educational Series, Inc. 11th ed. 2013).

method can be used to gain access to the CSIP Digital Rights Management Application, in lieu of the Smart Card Dongle.

18.   The MR Response Generator Tool can be installed on any computer that runs Microsoft Windows OS, XP and higher. However, gaining actual access to the program is restricted.

19.   Any access to or use of Philips' Proprietary Service Applications by anyone other than authorized Philips personnel is strictly prohibited. Moreover, alike Philips' CSIP Digital Rights Management Application, Proprietary Service Applications are protected by passwords and other security features including, but not limited to, its Field Service Engineers' login credentials.

20.   Plaintiff's Field Service Engineers are the ones generally responsible for the installation, configuration, servicing and repair of Philips medical equipments by accessing the CSIP Digital Rights Management Application embedded on each of their systems by means of Philips' Proprietary Service Applications.

21.   At the time of employment with Philips PR, Field Service Engineers – alike those holding company management positions – are required to enter into confidentiality/non-disclosure agreements pursuant to which they agree not to disclose, in whole or in part, and/or by any means whatsoever, Philips' proprietary information and trade secrets.

22.   As a result, and upon agreeing not to disseminate Philips' company-owned confidential information, Field Service Engineers are allowed access to and trained in the use of its Proprietary Service Applications.

23. This authorization for use of Philips' Proprietary Service Applications does not give Field Service Engineers any right or title, or any license or other right to access, use, decompile, disassemble, manipulate, reverse engineer or alter such property.

24. On April 6, 2006, Aibonito Mennonite General Hospital acquired a "Philips Panorama 1.0T" Magnetic Resonance Imaging system from Philips PR. See Quotation attached hereto and made a part hereof as **Exhibit 1**.

25. Similarly, on September 23, 2008, Medical X Ray Center, P.S.C. ("Medical X Ray") acquired a "Philips Intera 1.5T" Magnetic Resonance Imaging system from Philips PR. See Quotation attached hereto and made a part hereof as **Exhibit 2**.

26. Co-defendant Mr. Sumpter-López was the designated Key Account/Sales Account Manager within Philips PR in charge of overseeing the sale of both equipments and tasked with managing the commercial relationship with both Aibonito Mennonite General Hospital and Medical X Ray Center, P.S.C. See **Exhibits 1** and **2**.

27. For purposes of monitoring, servicing, providing support and/or resolving potential technical issues remotely, Philips' Magnetic Resonance Imaging systems are generally enabled at the time of installation with a Remote Services Network Router ("RSNR") for connecting to the equipment.

28. Both Medical X Ray Center's "Philips Intera 1.5T" and Aibonito Mennonite General Hospital's "Philips Panorama HFO" were enabled with Philips' RSNR for connecting and remote servicing the equipments.

29. At all times relevant mentioned co-defendants Mr. Toro-Aponte and Mr. Bracero were employed by Philips PR as Field Service Engineers.

30. As a term for their employment at the time of hiring, defendants Mr. Sumpter-López, Mr. Toro-Aponte and Mr. Bracero entered into a broad confidentiality

6

agreement (hereinafter, the "Confidentiality Agreement") with Philips PR precluding the disclosure – either directly or indirectly – of any information that would be contrary to Plaintiff's private interests, including, without limitation, any secret or confidential information relating to the business of Philips.

31. In pertinent part, that *Confidentiality Agreement* provides the following:

"In consideration of my accepting or continuing work at Philips Electronics North America Corporation or any of its divisions, subsidiaries or affiliates, during such time as may be mutually agreeable, and in consideration of the salary or wages paid to me, I [defendant] agree: (1) Not to use, publish or otherwise disclose (except as my job requires) either during or after my employment, any secret or confidential (proprietary) information or data of the company or its customers or any other third party received by the company in confidence; (2) Upon the termination of my employment, to deliver promptly to the company all written and other materials that relate to the business of the company or its affiliates [...]" See Employee Ethics and Intellectual Property Agreement attached hereto and made a part hereof as **Exhibit 3**.

32. Because of their positions as Sales Account Manager and Field Service Engineer with Philips PR, Mr. Sumpter-López, Mr. Bracero and Mr. Toro-Aponte had full access and login credentials to Philips' Proprietary Service Applications.

33. On November 10, 2009, Mr. Toro-Aponte's and Mr. Sumpter-López's employment with Philips PR was terminated.

34. At the time of termination, both Mr. Toro-Aponte and Mr. Sumpter-López refused to subscribe plaintiff's *Affirmation of Employee Ethics and Intellectual Property Agreement*, for purposes of confirming and ratifying all terms and conditions of the *Confidentiality Agreement* executed at the time of employment. See Affirmations of Employee Ethics and Intellectual Property Agreements attached hereto and made a part hereof as **Exhibits 4** and **5**, respectively.

35. Immediately thereafter, Mr. Sumpter-López and Mr. Toro-Aponte founded GIS Partners Corp. (previously defined as "GIS"), a for profit corporation whose aim and/or purpose is to provide for the sale, repair and maintenance of medical imaging and surgical equipment including, but not limited to, "Philips" branded medical products.

36. Pursuant to GIS' "Certificate of Incorporation", the company would be in charge of managing and hiring all qualified and licensed personnel for providing its services. See Certificate of Incorporation attached hereto and made a part hereof as **Exhibit 6**.

37. Philips PR and GIS are competitors in the medical equipment maintenance and repair services market.

38. On February 24, 2012, Mr. Bracero ceased its employment with Philips PR.

39. At the time of termination, Mr. Bracero (likewise) refused to subscribe Philips' *Affirmation of Employee Ethics and Intellectual Property Agreement*, for purposes of confirming and ratifying all the terms and conditions of the *Confidentiality Agreement* executed at the time of employment.

40. Also, and unknown to Philips PR at the time, prior to Mr. Bracero's termination of employment, defendant unlawfully extracted and retained copies of Philips' Proprietary Service Applications. This, despite the fact that Mr. Bracero knew that he had no legal rights in and to Philips' proprietary computer systems.

41. Upon information and belief, following his employment with Philips PR, Mr. Bracero was hired as a service technician by co-defendant GIS.

42. Shortly after Mr. Bracero ended his employment at Philips PR, on August 28, 2012, Aibonito Mennonite General Hospital cancelled its *Customer Care Service*

*Agreement* with Philips PR for the repair, maintenance and warranty work on the "Philips Panorama 1.0T" and worth $630,350.00. See **Exhibit 7**.

43. At the same time, Medical X Ray Center has declined all offers and attempts by Philips PR to service the "Philips Intera 1.5T" by and through a *Customer Care Service Agreement*.

44. Up and until ceasing his employment with Philips PR on February 24, 2012, Mr. Bracero's designated login credentials for accessing plaintiff's Proprietary Service Applications remained unchanged and/or unaltered.

45. Philips PR's authorization for Mr. Bracero to access its Proprietary Service Applications continued until May 31, 2012, when his UserID was deactivated and his assigned Philips' engineer laptop with plaintiff's Proprietary Service Applications was retrieved, along with his Field Service Engineer tools, dongles,[4] fleet vehicle and mobile phone.

46. Mr. Bracero's last known login to Philips PR's proprietary computer systems was on February 27, 2012.

47. Approximately in late October, 2014, Medical X Ray Center placed an isolated request for maintenance and support with Philips PR. Accordingly, Philips PR performed a remote login to access the Intera 1.5T.

48. Upon doing so, the Intera 1.5T's system's logs revealed that Mr. Bracero's login credentials had been used to access, without proper authorization, Philips' CSIP Digital Rights Management Application by and through Philips' MR Response Generator Tool.

---

[4] "Dongle. 1. a device that attaches to a computer, typically on a USB port, and must be present in order to run a particular piece of software, but has no other purpose. Dongles are used to prevent unauthorized copying." Barron's Dictionary of Computer and Internet Terms (Barron's Educational Series, Inc. 11th ed. 2013).

49. Once alerted of the unauthorized level of access, further investigation by Philips PR – in conjunction with outside forensic experts that took months and is still ongoing – revealed that Mr. Bracero's credentials were being used in association with Philips' proprietary MR Response Generator Tool to access its CSIP Digital Rights Management Application for servicing "Philips" branded medical equipments.

50. Although the precise means by which Mr. Bracero, Mr. Toro-Aponte, Mr. Sumpter-López and/or GIS have been able to manipulate – i.e. remove, spoof or bypass – Philips' MR Response Generator Tool without an active and authorized Philips' IST/PMSSec account in order to run and/or obtain a valid response from Philips' CSIP Digital Rights Management Application is not yet known, and will be the subject of further investigation, all entries to Philips' propietary computer systems have not been authorized by plaintiff and have been pursued by defendants clandestinely.

51. Plaintiff's ability to attract and retain customers for the repair and maintenance of its products depends on the continued security and integrity of its proprietary computer systems, which allow for conducting tests and diagnostic analyses not available through public sources.

52. Upon information and belief, at the time of filing the present Complaint defendants continue to access Philips' proprietary computer systems without authorization; with the latest unauthorized access as per the Intera 1.5T's system's log having occurred on August 18, 2015.

53. Unless enjoined, defendants' actions will continue to cause harm to Philips PR, and Philips PR has no adequate remedy at law.

54. Accordingly, Philips PR has been forced to bring this action to stop defendants from further using its Proprietary Service Applications for accessing its CSIP Digital Rights

Management Application without authorization and to enjoin them from further misappropriating its trade secrets and causing it irreparable harm.

## FIRST CAUSE OF ACTION
### (Unlawful Trafficking of Passwords)

55. Plaintiff repeats and realleges the averments set forth in paragraphs 1 through 54 of this Complaint.

56. Mr. Bracero's transfer of Philips' Proprietary Service Applications along with their passwords and other security features constitutes "trafficking" in computer passwords, as defined in 18 U.S.C.A. §1029, in that they were transferred, or otherwise disposed of, to others, or obtained control of with the intent to transfer or dispose of them.

57. Mr. Bracero's trafficking of Philips' Proprietary Service Applications along with their passwords and other security features substantially affects interstate commerce in that they are being trafficked over the Internet and used by plaintiff in interstate commerce and communication.

58. Mr. Bracero's trafficking of Philips' Proprietary Service Applications along with their passwords and other security features has caused and will continue to cause plaintiff to suffer injury, with "damages" and "losses" as those terms are defined in Sections 1030(e)(8) and 1030(e)(11) of the Computer Fraud and Abuse Act (18 U.S.C.A. §§1030(e)(8) and 1030(e)(11)), respectively, substantially in excess of $5,000.00 over a one-year period.

59. With respect to loss, plaintiff has already lost the value of the *Customer Care Service Agreement* with Aibonito Mennonite General Hospital and Medical X Ray as a likely customer; and spent well in excess of $5,000.00 investigating and assessing the possible impairment of the integrity of its Proprietary Service Applications, taking action to

counteract Mr. Bracero's theft, and conducting a damage assessment regarding Mr. Bracero's unlawful trafficking.

60. With respect to damage, by illegally copying and disseminating Philips' Proprietary Service Applications along with their passwords, data and other security features, defendants have substantially impaired their integrity in an amount in excess of $5,000.00.

61. Defendants' activities constitute trafficking in computer passwords in violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030(a)(6).

62. By trafficking Philips' Proprietary Service Applications along with their passwords, data and other security features, defendants are also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of plaintiff's proprietary computer systems.

63. As such, pursuant to 18 U.S.C.A. §1030(g), plaintiff is entitled to maintain this civil action against defendants to obtain compensatory damages and injunctive and other equitable relief for the reasons identified above. Defendants' conduct involves at least one of the factors identified in 18 U.S.C.A. §1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to plaintiff and its customers as a result of defendants' conduct during a one year period aggregated at least $5,000.00 in value.

### SECOND CAUSE OF ACTION
### (Unauthorized Access of Protected Computer Systems)

64. Plaintiff repeats and realleges the averments set forth in paragraphs 1 through 63 of this Complaint.

65. In connection with the provision of its repair and maintenance services, Philips PR owns and maintains one or more protected computers as defined in 18 U.S.C. §1030(e)(2)(B).

66. By their actions, defendants have willfully infringed plaintiff's rights related to Philips' CSIP Digital Rights Management Application and Proprietary Service Applications specially designed for use on each of the systems of the medical equipments it manufactures.

67. When entering into contracts with hospitals and healthcare providers for the repair and maintenance of Philips medical equipments, defendants are misrepresenting that their computer systems are being accessed through legitimate means when, in fact, they are not.

68. Because defendants are accessing Philips' CSIP Digital Rights Management Application without an active and authorized Philips IST/PMSSec account by somehow manipulating its MR Response Generator Tool, defendants' access to plaintiff's protected computer systems is not authorized in any way.

69. Defendants' conduct is without authorization, in that they have obtained information as outsiders for their own profit and financial benefit by intentionally accessing a protected computer without approval and, in doing so, have impaired the integrity of plaintiff's proprietary computer systems, including their data. 18 U.S.C.A. §§1030(a)(2)(C) and (a)(5)(C).

70. Defendants' unauthorized access of Philips' protected computer systems has caused and will continue to cause plaintiff to suffer injury, with "damages" and "losses" as those terms are defined in Sections 1030(e)(8) and 1030(e)(11) of the Computer Fraud and

Abuse Act (18 U.S.C.A. §§1030(e)(8) and 1030(e)(11)), respectively, substantially in excess of $5,000.00 over a one-year period.

71. With respect to loss, plaintiff has already lost the value of the *Customer Care Service Agreement* with Aibonito Mennonite General Hospital and Medical X Ray as a likely customer; and has spent well in excess of $5,000.00 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking action to counteract defendants' theft, and conducting a damage assessment regarding defendant's unauthorized access.

72. With respect to damage, by infiltrating plaintiff's protected computer systems, defendants have substantially impaired their integrity in an amount in excess of $5,000.00. Moreover, defendants' actions have deprived plaintiff of the means to control the quality of its products, repair and maintenance services and proprietary information.

73. Defendants' actions are intentional, malicious and/or willful.

74. Pursuant to 18 U.S.C.A. §1030, plaintiff is entitled to maintain this civil action against defendants to obtain compensatory damages and injunctive and other equitable relief for the reasons identified above. Defendants' conduct involves at least one of the factors identified in 18 U.S.C.A. §1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to plaintiff and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000.00 in value.

### THIRD CAUSE OF ACTION
### (ITSPA)

75. Plaintiff repeats and realleges the averments set forth in paragraphs 1 through 74 of this Complaint.

14

76. Philips PR's proprietary computer systems and confidential information contained therein constitute valuable property belonging to plaintiff.

77. As set forth above, plaintiffs' proprietary computer systems are not available from public sources and would not have been available to defendants but for Mr. Toro-Aponte's, Mr. Sumpter-López's and/or Mr. Bracero's initial access to the same while employed by Philips PR.

78. Defendants have knowingly taken said property of plaintiff without authorization and used it for their own benefit and economic detriment of Philips PR.

79. The absconded proprietary information obtained by defendants is of high commercial value and importance, and is useful to any entity, which would compete with Philips PR, if publicized.

80. Accordingly, defendants are liable to Philips PR under Puerto Rico's Industrial and Trade Secret Protection Act, 10 P.R. Laws Ann. §§4131-4141, which provides for the protection of information that procures a competitive advantage for its owner – i.e. Philips PR.

81. Philips PR has been and in the absence of an injunction will continue to be irreparably harmed and damaged by defendants' actions, and Philips PR has no adequate remedy at law.

## FOURTH CAUSE OF ACTION
### (Breach of Contract)

82. Plaintiff repeats and realleges the averments set forth in paragraphs 1 through 81 of this Complaint.

83. As set forth above, co-defendants Mr. Sumpter-López, Mr. Toro-Aponte and Mr. Bracero were bound by the terms and conditions of the *Confidentiality Agreements*.

84. These agreements precluded the aforementioned co-defendants from disclosing – either directly or indirectly – any information that would be contrary to plaintiff's private interests, including, without limitation, any secret or confidential information relating to the business of Philips.

85. As such, defendants' actions constitute a breach of the terms and conditions of the *Confidentiality Agreements*.

86. As a direct and proximate result of defendants' breach of the *Confidentiality Agreements*, Philips PR has been damaged in an amount of no less than $100,000.00.

## FIFTH CAUSE OF ACTION
### (Unfair Competition)

87. Plaintiff repeats and realleges the averments set forth in paragraphs 1 through 86 of this Complaint.

88. As set forth above, defendants' actions constitute unfair methods of competition and unfair and deceptive acts under Puerto Rico law, inasmuch as defendants have entered into contracts and/or performed services relying on proprietary information belonging to Philips PR.

89. As a direct and proximate result of defendants' unfair competition, Philips PR has been damaged in an amount of no less than $100,000.00.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

90. Plaintiff repeats and realleges the averments set forth in paragraphs 1 through 89 of this Complaint.

91. Defendants' unauthorized use of plaintiff's proprietary computer systems and confidential information contained therein, for their own benefit, constitute an economic

loss to Philips PR and unjustly enrichment for defendants pursuant to the Puerto Rico unjust enrichment doctrine.

92. As a result of defendants' unjust enrichment, Philips PR has been impoverished in an amount of no less than $100,000.00.

## JURY DEMAND

93. Plaintiff hereby demands a trial by jury on all issues triable to a jury.

**WHEREFORE**, plaintiff respectfully requests this Honorable Court to enter judgment against defendants as follows:

1. That defendants be immediately and permanently enjoined from directly or indirectly:

    a. trafficking Philips' Proprietary Service Applications along with their passwords and other security features;

    b. using, directing, aiding or conspiring with others to access plaintiff's proprietary computer systems;

2. That defendants be immediately and permanently enjoined from directly or indirectly:

    a. copying, reproducing, disseminating or using Philips' Proprietary Service Applications;

    b. circumventing and/or assisting others to circumvent plaintiffs' technological measures in order to access its proprietary computer systems;

    c. using plaintiff's trade secrets and/or confidential (proprietary) information for their own profit and financial benefit.

3. That defendants be ordered to pay to plaintiff all damages suffered by reason of the unlawful acts, as set forth by the CFAA, 18 U.S.C. §1030;

4. That defendants be ordered to pay to plaintiff all damages suffered by reason of the unlawful acts, as set forth by ITSPA, 10 P.R. Laws Ann. §§4131-4141;

5. That the Court issue an Order directing defendants to preserve and maintain all records, in any form (either paper, electronic, or otherwise) that evidence, reference, concern, or relate, in any way to defendants' unlawful acts, as set forth in this Complaint.

6. That the Court issue an Order requiring defendants to file with the Court and to serve on counsel for plaintiff within thirty (30) days from the entry of the injunction a report in writing under oath, setting forth in detail the manner and form in which defendants have complied with the injunction and orders as described above.

7. That defendants be required to pay all costs, disbursements and reasonable attorney fees to plaintiff;

8. For such other and further relief as the Court may deem proper.

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

In San Juan, Puerto Rico, this 2nd day of November 2015.

**ADSUAR MUÑIZ GOYCO SEDA & PÉREZ-OCHOA, P.S.C.**
P.O. Box 70294
San Juan, Puerto Rico 00936-8294
Tel: 787.756.9000
Fax: 787.756.9010
Email: epo@amgprlaw.com
amercado@amgprlaw.com

/s/Eric Pérez-Ochoa
Eric Pérez-Ochoa
USDC-PR No. 206314

/s/Alejandro H. Mercado
Alejandro H. Mercado
USDC-PR No. 224708

*Counsel for Philips Medical Systems Puerto Rico, Inc.*

18

## VERIFICATION

I, Edwin O. Calo Rodríguez, General Manager of Philips Medical Systems Puerto Rico, Inc. ("Philips PR"), a subsidiary of Royal Philips Electronics (collectively referred to as "Philips"), have read this Complaint and, pursuant to 28 U.S.C. §1746, hereby declare under penalty of perjury that the foregoing factual allegations are true and correct upon the records in the possession of Philips, and other information obtained from representatives and employees of Philips.

Executed in San Juan, Puerto Rico, this 30 day of October, 2015.

Edwin O. Calo Rodríguez

Affidavit No. 16

