# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

PHILIPS MEDICAL SYSTEMS PUERTO RICO, INC.,
    Plaintiff

v.

GIS PARTNERS CORP. *et al.*,
    Defendants.

Civil No. 15–2702 (BJM)

## OPINION AND ORDER

Philips Medical Systems Puerto Rico, Inc. ("Philips-PR") brought this action against GIS Partners Corp. ("GIS"), Hernan Toro, David Sumpter, and Radames Bracero, alleging a breach of contract, unfair competition, violation of four sections of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030(a)(2), (4), (5)(C), (6), and violation of Puerto Rico's Industrial and Trade Secret Protection Act ("ITSPA"), P.R. Laws Ann. tit. 10, §§ 4131–4141. Docket No. 38. GIS, Toro, and Sumpter (collectively "Defendants") filed a counterclaim alleging a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a), Act 115 of Dcember 20, 1991, 29 P.R. Laws Ann. § 194 et seq. ("Act 115"), and Articles 1802 and 1803 of the Puerto Rico Civil Code, 32 P.R. Laws Ann. § 5141 and 5142 ("Articles 1802 and 1803"). Philips-PR moved to dismiss the counterclaim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Docket No. 150, and Defendants opposed. Docket No. 156. The parties consented to proceed before a magistrate judge. Docket No. 21.

For the reasons set out below, the motion to dismiss is **GRANTED**.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts are bound to construe jurisdictional grounds narrowly. *See, e.g.*, *Hawes v.*

*Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir. 1979). When deciding a motion to dismiss under Rule 12, a court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in the non-movant's favor. *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006); *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 144 (1st Cir. 2002). The party asserting federal jurisdiction has the burden of proving its existence by the preponderance of the evidence. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995); *Bank One, Texas v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992).

When deciding whether subject-matter jurisdiction exists, the court follows two general rubrics: (1) when a defendant challenges the legal sufficiency of the facts alleged, the court credits plaintiffs' factual allegations and draws reasonable inferences in his or her favor; and (2) when the defendant challenges the truth of facts alleged by the plaintiff and offers contrary evidence, the court weighs the evidence. *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

Although 12(b)(1) is "usually employed in the instance in which the moving party believes there is no federal question jurisdiction under 28 U.S.C. § 1331 or diversity of citizenship jurisdiction under 28 U.S.C. § 1332," 12(b)(1) is also an appropriate "procedural vehicle" to challenge a "[f]ailure to exhaust administrative remedies." *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 8 n.6 (1st Cir. 2005).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), on the other hand, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). The plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary" for the action. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). In evaluating a motion to dismiss, the court first discards any "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" *Ocasio-Hernández*, 640 F.3d at 12 (quoting

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The remaining "[n]on-conclusory factual allegations" are fully credited, "even if seemingly incredible." *Id*. The court engages in no fact-finding and does not "forecast a plaintiff's likelihood of success on the merits." *Id.* at 13. Rather, it presumes that the facts are as properly alleged by the plaintiff and draws all reasonable inferences in the plaintiff's favor. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Taken together, the facts pleaded must "state a plausible, not a merely conceivable, case for relief." *Ocasio-Hernández*, 640 F.3d at 12.

## BACKGROUND

Philips-PR, a subsidiary of Royal Philips Electronics, is a Puerto Rico corporation that sells and services medical equipment in Puerto Rico, such as magnetic resonance imaging ("MRI") machines. Docket No. 91 ¶¶ 1, 3. GIS is a Puerto Rico corporation founded by Toro and Sumpter, who are both residents of Puerto Rico. Docket No. 92 ¶ A(ii); Docket No. 91 ¶ 6–7.

Toro, Sumpter, and Bracero are former employees of Philips-PR. Toro served as a field service engineer of CT scan products for 15 years and left the company in 2009. Docket No. 92 ¶ B. Sumpter worked as an equipment salesperson for 20 years and also left the company in 2009. *Id*. at ¶ C. Bracero was a field service engineer of MRI machines and left the company in February 2012. Docket No. 38 at 3. In November 2010, Sumpter and Toro filed a complaint against Philips-PR alleging wrongful termination under Puerto Rico law and seeking $317,896.44 in damages. Docket No. 131 at 4. At the filing of this counterclaim, trial for their wrongful termination claim was set for February 2017, and the case is still active. *Id*.

In November 2015, Philips-PR filed a complaint against GIS, Toro and Sumpter, alleging breach of contract, unfair competition, violation of four sections of the CFAA, and violation of the ITSPA. Docket No. 38 at 1. In its complaint, Philips-PR alleged that after his employment with Philips-PR terminated, Bracero used his former employee login

information to hack into Philips-PR's software to gain access to the restricted access portions of Philips-PR's MRI machine and ultimately to its proprietary information. *Id*. at 17. Philips-PR further alleges that Bracero provided this information and access to GIS, Toro, and Sumpter, all of whom then accessed Philips-PR's proprietary information. *Id*. at 17–18; 31–32. According to Philips-PR, this was a breach of Toro and Sumpter's employment contracts and constitutes unfair competition by all defendants as they used Philips-PR's proprietary information to conduct GIS's business. *Id*. at 38.

Although Philips-PR initially brought its complaint against GIS, Toro, Sumpter, and Bracero, Philips-PR dismissed its complaint against Bracero in July 2016 after the two parties reached a settlement agreement. Docket No. 89.

## DISCUSSION

Philips-PR seeks a dismissal of Defendants' counterclaim for lack of subject-matter jurisdiction under 12(b)(1) and failure to state a claim upon which relief can be granted under 12(b)(6). Docket No. 150 at 1. A court must have subject-matter jurisdiction over each claim and can "proceed no further if such jurisdiction is wanting." *Godin v. Schencks*, 629 F.3d 79, 83 (1st Cir. 2010) (quoting *In re Recticel Foam Corp.,* 859 F.2d 1000, 1002 (1st Cir. 1988)); *Grail Semiconductor, Inc. v. Stern*, No. 13-03687, 2014 WL 12594162, at *3 (C.D. Cal. Mar. 3, 2014) (dismissing one of the defendant's causes of action in the counterclaim because it did not stem from the same case and controversy as the complaint but finding that there was subject-matter jurisdiction over the remaining causes of action in the counterclaim because they were compulsory). Consequently, "[w]e are bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject-matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990).

"A plaintiff must exhaust his administrative remedies, including [Equal Employment Opportunity Commission] procedures, before proceeding under Title VII in

federal court." *Frederique-Alexandre v. Dep't of Nat. & Envtl. Res. Puerto Rico*, 478 F.3d 433, 440 (1st Cir. 2007) (citing *Lebrón–Ríos v. U.S. Marshal Serv.*, 341 F.3d 7, 13 (1st Cir. 2003)). Before a person can bring a complaint alleging a violation of Title VII in federal court, he must first file an administrative charge with the Equal Employment Opportunity Commission (EEOC) within "a specified and relatively short time period, usually 180 or 300 days" of the "alleged unlawful employment practice." *Cintron-Garcia v. Supermercados Econo, Inc.*, 818 F. Supp. 2d 500, 506–07 (D.P.R. 2011) (explaining that in Puerto Rico, an "aggrieved employee has 300 days" to file a charge as opposed to the typical 180 days "in instances where the local Department of Labor is empowered to provide relief, i.e., in instances of deferral jurisdiction" (internal quotations omitted)); 42 U.S.C. § 2000e-5(f). Once the aggrieved employee files a charge, the EEOC will investigate the charge and then issue a right-to-sue letter. *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001). The right-to-sue letter serves as the plaintiff's key to begin federal court proceedings for a Title VII claim. *See Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999) (a failure to file a claim with the EEOC or an authorized State or local agency "bars the courthouse door, as courts long have recognized that Title VII's charge-filing requirement is a prerequisite to the commencement of suit").

Here, Defendants' first claim is for retaliation as prohibited under Title VII. Docket No. 131 at 5. Nevertheless, Defendants do not have a right-to-sue letter from the EEOC and in fact have not alleged that they have even begun the administrative process. *See* Docket No. 156 at 2 (Defendants state in their opposition to the motion that they do not need to "exhaust administrative remedies because they did not file their 'retaliation charge' with the" EEOC). Having failed to exhaust the administrative process, the courthouse door is still barred to Defendants' Title VII claim.

The administrative process is obligatory, although not jurisdictional, and thus is subject to the equitable exceptions of waiver, estoppel, and equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). However, as Defendants have offered no argument as to why the court should "bring [their claim] within that tiny sphere of equitable exceptions," there is no need to address them. *Frederique-Alexandre v. Dep't of Nat. & Envtl. Res. Puerto Rico*, 478 F.3d 433, 440 (1st Cir. 2007) (quoting *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 279 (1st Cir. 1999)); *see Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) ("[A] litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace." (quoting *Paterson-Leitch Co. v. Mass. Municipal Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988))).

Therefore, I find that Defendants' claim arising under Title VII should be dismissed without prejudice. *See Lebron*-Rios, 341 F.3d at 12 n.6 (finding that claims dismissed for failure to exhaust administrative remedies should be dismissed without prejudice as "the question whether the charge is timely . . . is a matter for the responsible agency in the first instance, and for the district court in the next").

Turning to Defendants' other state law claims, this court has subject-matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. The court may also exercise supplemental jurisdiction over counterclaims "so related to claims in the action within such original jurisdiction that [it] form[s] part of the same case or controversy under Article III of the United States Constitution." *TC Investments, Corp. v. Becker*, 733 F. Supp. 2d 266, 285–86 (D.P.R. 2010) (quoting 28 U.S.C. § 1367(a)); *see also Pacheco v. St. Luke's Emergency Assocs.,* 879 F. Supp. 2d 136, 142 (D. Mass. 2012) (finding that the court had supplemental jurisdiction under § 1367(a) over the plaintiff's four state law claims after individually analyzing each

to verify that it came from a "common nucleus of operative facts" as the federal law claim). Although exercising supplemental jurisdiction over counterclaims used to come down to the division of compulsory and permissive counterclaims, the First Circuit has "abolishe[d]" that framework since the passage of 28 U.S.C. § 1367. *Global NAPS, Inc. v. Verizon New Eng. Inc.*, 603 F.3d 71, 87 (1st Cir. 2010) ("[W]e hold that § 1367 supersedes case law on supplemental jurisdiction that had distinguished between compulsory and permissive counterclaims. . . . § 1367 abolishes the conceptual framework underpinning the old compulsory-permissive counterclaim distinction."); Fed. R. Civ. P. 13.

When determining whether a counterclaim is part of the same case or controversy as the original complaint—a hurdle that compulsory counterclaims by definition will meet—courts "look[] to 'whether the claims arose from a "common nucleus of operative fact."'" *TC Investments, Corp.*, 733 F. Supp. 2d at 285 (quoting *Global NAPS, Inc.*, 603 F.3d at 88); Fed. R. Civ. P. 13(a)(1) (compulsory counterclaims "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim"). There is "a common nucleus of operative fact [if] 'the essential facts giving rise to the claims asserted' [are] a constant factor in both pleadings." *TC Investments, Corp.*, 733 F. Supp. 2d at 286 (quoting *Nesglo, Inc. v. Chase Manhattan Bank, N.A.,* 562 F. Supp. 1029, 1041 (D.P.R. 1983)); *see Global NAPS*, 603 F.3d at 85 (finding that the counterclaim arose from the same case or controversy as the complaint where the "parties' claims ultimately [arose] from a dispute over the same agreement and involve[d] the same basic factual question").

For federal question jurisdiction, the cause of action must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Conversely, Defendants' remaining causes of action are brought under Puerto Rico law: Articles 1802 and 1803 and Act 115. *See* Docket No. 131 at 8 (titling the remaining causes of action, "Cause of Action Arising under the Puerto Rico General Tort Statutes"). Because Defendants seek relief under Puerto Rico law as opposed to federal law, the court cannot

exercise federal question jurisdiction. The second type of subject-matter jurisdiction, diversity of citizenship jurisdiction, requires that parties on both sides be "citizens of different States." 28 U.S.C. § 1332. This means that diversity jurisdiction does not exist where any plaintiff is a citizen of the same state as any defendant. *Alvarez-Torres v. Ryder Mem'l Hosp., Inc.*, 582 F.3d 47, 53–54 (1st Cir. 2009). As identified by both Philips-PR and Defendants, Philips-PR is a corporation incorporated in Puerto Rico. Docket No. 38 at 2; Docket No. 131 at 3. Similarly, GIS is also a corporation incorporated in Puerto Rico, and Toro and Sumpter are residents of Puerto Rico. Docket No. 38 at 2; Docket No. 131 at 3; Docket No. 91 ¶ 6–7. With all the defendants and the plaintiff as citizens of Puerto Rico, the court cannot exercise diversity of citizenship jurisdiction.

The last option for subject-matter jurisdiction is supplemental jurisdiction, and that fails, too. In its complaint, Philips-PR alleged that Defendants used expired employee login information to gain access to the protected proprietary information on Philips-PR's MRI machines and then used that information for their own financial benefit. Docket No. 38 at 1; 4–16. Philips-PR alleges that this constituted breach of contract, unfair competition, violation of trade secrets, and four violations of the CFAA. *See* Docket No. 38. On the other hand, Defendants' counterclaim is brought under entirely different federal and state laws and is based on entirely different facts, namely Toro and Sumpters' alleged wrongful termination and the filing of Philips-PR's lawsuit. Although the counterclaim is premised on the very existence of the complaint, the only overlapping facts from both the complaint and the counterclaim are the identity of the parties and the fact that Toro and Sumpter are no longer employees of Philips-PR. Docket No. 38; Docket No. 131. For instance, whereas the amended complaint includes only a one sentence paragraph about Toro and Sumpter's termination, that termination is the very foundation of the counterclaim. Docket No. 38 at 11; Docket No. 131 at 4–5. Similarly to *TC Investments, Corp.*, the "facts in the counterclaim thus are not sufficiently related to plaintiffs' breach of contract claim so as to

share a common nucleus of operative fact." 733 F. Supp. 2d at 286. Therefore, the counterclaim does not arise from the same case and controversy as the complaint, and supplemental jurisdiction is not appropriate.

With no federal question jurisdiction, diversity of citizenship jurisdiction, or supplemental jurisdiction, I find that Philips-PR's motion to dismiss based on lack of subject-matter jurisdiction must be **GRANTED**.

As the court does not have subject-matter jurisdiction over any of Defendants' claims, there is no need to reach Philips-PR's arguments under 12(b)(6).

## CONCLUSION

For the foregoing reasons, Philips-PR's motion to dismiss is **GRANTED** without prejudice. **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of October, 2017.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge